IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREGORY CHARLES PRINCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | No. 3:13-cv-4804-P-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Gregory Charles Prince's Application for Attorneys Fees Under the
"Bad Faith" Provision of the Equal Access to Justice Act [Dkt. No. 21] has been
referred to the undersigned United States magistrate judge under 28 U.S.C. § 636(b)
by Chief Judge Jorge A. Solis. The undersigned issues the following findings of fact,
conclusions of law, and recommendation that Plaintiff's Application for Attorneys Fees
Under the "Bad Faith" Provision of the Equal Access to Justice Act [Dkt. No. 21] should
be granted in part and denied in part.

**Background**

Plaintiff Gregory Charles Prince successfully appealed the denial of his
application for disability insurance benefits and Supplemental Security Income
payments. After Plaintiff sought judicial review of a final adverse decision of the
Commissioner of Social Security pursuant to 42 U.S.C. § 405(g), after Defendant

Carolyn W. Colvin, Acting Commissioner of Social Security ("Defendant" or the "Commissioner"), filed an answer, and after Plaintiff filed his opening brief, *see* Dkt. Nos. 1, 10, & 17, the Commissioner only then, on the eve of her briefing deadline, filed an Unopposed Motion to Remand, *see* Dkt. No. 18. In support of the remand motion, the Commissioner explained:

> The Administrative Law Judge (ALJ) found that Plaintiff had the residual functional capacity (RFC) to perform "light" work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except he could lift and carry 20 pounds occasionally and ten pounds frequently; could stand and/or walk for three to four hours in an eight-hour workday; and sit with normal breaks for six hours in an eight-hour workday (Tr. 16, Finding 5). Additionally, the ALJ found that Plaintiff could occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, frequently balance and crawl, and occasionally stoop, kneel and crouch (Tr. 16, Finding 5). At step five of the sequential evaluation process, the ALJ stated that he obtained vocational expert evidence and that the vocational expert indicated that a hypothetical person with Plaintiff's vocational factors and established RFC could perform work as a waxer, addresser, and assembler (Tr. 20, 170). The ALJ further stated that he determined, pursuant to Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4, 2000), that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles (DOT) (Tr. 20). The ALJ then concluded that the claimant was not disabled "[b]ased on the testimony of the vocational expert" (Tr. 20).
>
> The Commissioner concedes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner respectfully requests that the Court remand the instant case pursuant to sentence four in order to re-evaluate the case and conduct a new hearing, if necessary.

Dkt. No. 18 at 2.

Chief Judge Solis granted the Unopposed Motion to Remand [Dkt. No. 18], reversing the decision of the Commissioner and remanding the action for further proceedings pursuant to the fourth sentence of U.S.C. § 405(g), and then entered

judgment. *See* Dkt. Nos. 19 & 20.

Plaintiff then moved for an award of attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, invoking Section 2412(b)'s common-law provision, which authorizes a fee award at market hourly rates, or, alternatively, Section 2412(d), which authorizes a fee award at capped hourly rates. *See* Dkt. No. 21. The Commissioner does not object to all of Plaintiff's request but objects to an award under Section 2412(b)'s common-law provision and objects to the number of hours that Plaintiff's counsel devoted the case as being excessive. *See id.* at 1-2; Dkt. No. 24.

The undersigned held oral argument on Plaintiff's application on January 22, 2015 and, in preparing these findings, conclusions, and recommendation, has benefitted from the arguments of both counsel as to the Commissioner's objections.

## Legal Standards

"There are two distinct methods for a district court to award attorneys' fees under the EAJA." *Gate Guard Servs. L.P. v. Solis*, Civ. A. No. V-10-91, 2013 WL 3873275, at *3 (S.D. Tex. July 24, 2013).

"Under the first method, the court is required to grant attorneys' fees to a prevailing party against the United States, unless there are special circumstances that make the award unjust or the government can show that it was substantially justified in its legal position." *Id.* at *4 (citing 28 U.S.C. § 2412(d)(1)(A)). Thus, under Section 2412(d), the Court must award attorneys' fees and expenses if: (1) the claimant is the "prevailing party"; (2) the Government's position was not "substantially justified"; and (3) there are not special circumstances that make an award unjust. *See Murkledove v.*

*Astrue*, 635 F.3d 784, 790 (5th Cir. 2011) (citing 28 U.S.C. § 2412(d)(1)(A)). To be the "prevailing party" for purposes of the EAJA, the claimant must obtain a "sentence four" judgment reversing denial of disability benefits and requiring further proceedings before the agency. *See Shalala v. Schaefer*, 509 U.S. 292, 300-02 (1993).

But "[t]he EAJA further permits a court to award attorneys' fees to the prevailing party to the same extent it may award fees in cases involving other parties, whether by statute or common law." *Gate Guard*, 2013 WL 3873275, at *4 (citing 28 U.S.C. § 2412(b)). Specifically, Section 2412(b) states that "[t]he United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b); *see also Scarborough v. Principi*, 541 U.S. 401, 406 (2004). The so-called American Rule provides that litigants pay their own attorneys' fees and that the prevailing party in civil litigation may not collect attorneys' fees from the losing party. *See Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013). "Under section 2412(b) the federal government is subject to common law and statutory exceptions to the American Rule forbidding fee-shifting," *Knights of Ku Klux Klan, Realm of La. v. East Baton Rouge Parish School Bd.*, 735 F.2d 895, 898 (5th Cir. 1984) (footnote omitted), and so Section 2412(b) "makes the federal government subject to the 'bad faith' exception to the 'American Rule' on attorneys' fees," *Gate Guard*, 2013 WL 3873275, at *4 (citing *Baker v. Bowen*, 839 F.2d 1075, 1080, n.3 (5th Cir. 1988)). The bad-faith or common-law "exception allows an award of attorneys' fees where the party seeking the award can show that the government has acted in 'bad faith,

vexatiously, wantonly or for oppressive reasons.'" *Gate Guard*, 2013 WL 3873275, at *4 (quoting *Baker*, 839 F.2d at 1081).

"The court may consider conduct both during and prior to the litigation, although the award may not be based solely on the conduct that led to the substantive claim." *Perales v. Casillas*, 950 F.2d 1066, 1071 (5th Cir.1992); *accord Sanchez v. Rowe*, 870 F.2d 291, 294, 295 (5th Cir. 1989) ("While there is some authority to the contrary, we agree with Moore's treatise that the better view is that the requisite bad faith may be found only in bringing an action or causing an action to be brought. We have allowed fees only for bad-faith conduct related to the litigation, either in response to a claim before a suit has been filed or in the course of the litigation after a suit has been filed. .... We hold that the requisite bad faith may be found in a party's conduct *in response* to a substantive claim, whether before or after an action is filed, but it may not be based on a party's conduct *forming the basis* for that substantive claim." (footnote omitted; emphasis in original)). In *Baker v. Bowen*, 839 F.2d 1075 (5th Cir. 1988), in the Social Security appeal context, the United States Court of Appeals for the Fifth Circuit found Section 2412(b) bad faith based on litigation-related conduct at the Appeals Council stage. *See* 839 F.2d at 1081-82; *accord Sanchez*, 870 F.2d at 294 ("In *Baker v. Bowen*, in the context of an administrative adjudication, we also relied on litigation-related conduct as requisite to the allowance of fees." (footnote omitted)).

"The distinction between [Subsections 2412(b) and 2412(d)] is of considerable consequence in the calculation of amount of fees," because "Subsection 2412(d) imposes a presumptive $125 per hour cap on any award, unless it is adjusted for a special factor

or the cost of living. 28 U.S.C. 2412(d)(2)(A)," but, "[u]nder § 2412(b), ... the court may use a market rate to determine attorneys' fees." *Gate Guard*, 2013 WL 3873275, at *4 (internal quotation marks omitted). And, while "[f]ee awards under subsection (d), although based on the prevailing market rate, are subject to a statutory cap," "[a]wards under subsection (b) are not." *Romero v. Astrue*, 413 F. App'x 747, 748 (5th Cir. 2011). "Thus, § 2412(b) allows for attorneys fees that can greatly exceed the cap placed on a § 2412(d) award." *Gate Guard*, 2013 WL 3873275, at *4 (internal quotation marks omitted).

Under 28 U.S.C. § 2412(d), the governmental agency "has the burden of establishing that its position was substantially justified." *Sims v. Apfel*, 238 F.3d 597, 602 (5th Cir. 2001). But the claimant bears the "burden of showing bad faith on the part of the [agency] in order to justify an award of attorneys' fees under 28 U.S.C. § 2412(b)." *Gate Guard*, 2013 WL 3873275, at *7. And the Court "'must make a specific finding that the sanctioned party acted in bad faith,'" vexatiously, wantonly, or for oppressive reasons to impose a Section 2412(b) fee award. *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 796 (5th Cir 2013) (quoting *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997)).

Any attorneys' fees awarded under the EAJA must be reasonable. *See* 28 U.S.C. § 2412(b). The claimant has the burden of demonstrating that the hours claimed were reasonably expended on the prevailing claim through the presentation of adequately recorded time records as evidence. *See Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *Sandoval*, 86 F. Supp. 2d at

615-16. "In determining the reasonableness of attorney's fees under the EAJA, [the Fifth Circuit] has adopted the 12-factor 'lodestar' test enunciated in *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974)." *Sanders v. Barnhart*, No. 04-10600, 2005 WL 2285403, at *2 (5th Cir. Sept. 19, 2005); *see also Hall v. Shalala*, 50 F.3d 367, 369 (5th Cir. 1995).

Under this test, "[t]o decide an appropriate attorney's fee award, the court must first calculate a lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Sandoval v. Apfel*, 86 F. Supp. 2d 601, 615-16 (N.D. Tex. 2000) (citations omitted). The Court should use the lodestar calculation as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See Watkins*, 7 F.3d at 457. The hours remaining are those reasonably expended. *See id.* There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

After calculating the lodestar, the Court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995); *Johnson*, 488 F.2d at 717-19, *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989); *Sandoval*, 86 F. Supp. 2d at 615. The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of

-7-

taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717-19; *see also Saizan*, 448 F.3d at 800. Notably, "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted); *accord Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998). The Fifth Circuit has therefore "held that it is not necessary for a district court to examine each of the factors independently if it is apparent that the court has arrived at a just compensation based upon appropriate standards." *Sanders*, 2005 WL 2285403, at *2 (citation omitted). And, because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins,* 7 F.3d at 457.

The undersigned recognizes that the analysis set forth above, and particularly the interplay of the lodestar analysis and the *Johnson* factors, has recently been called into question. *See Perdue*, 559 U.S. at 552-53; *S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2013 WL 6332993, at *2-*3 (N.D. Tex. Dec. 5, 2013). But in a recent opinion, the Fifth Circuit, without comment or reference to the United States Supreme Court's decision in *Perdue v. Kenny A.*, 559 U.S. 542 (2010), continued to utilize the approach laid out by this Court above. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 502-

03 (5th Cir. 2013). *But see In re Pilgrim's Pride Corp.*, 690 F.3d 650, 663-64 (5th Cir. 2012) (analyzing whether any changes brought about by *Perdue* apply to bankruptcy attorneys' fees calculations); *but see also In re ASARCO, L.L.C.*, 751 F.3d 291, 296 (5th Cir. 2014) (following *Pilgrim's Pride*).

In *Perdue*, the Supreme Court was ultimately considering the appropriateness of an enhancement of an award of attorneys' fees, and Plaintiff here has not requested such an enhancement. *See* Dkt. No. 49 at 5. Other factors also distinguish this case from *Perdue*, including the fact that *Perdue* involved a 42 U.S.C. § 1988 claim. *See Perdue*, 559 U.S. at 558. Moreover, after the lodestar amount is determined, it may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar, *see Saizen*, 448 F.3d at 800, and the lodestar calculation may already take into account several *Johnson* factors, *see Hensley*, 461 U.S. at 434; *Black*, 732 F.3d at 503 n.8.

In light of the circumstances in this case – where there is no request for enhancement and no Section 1988 claim – the Court need not address whether *Perdue* changed the landscape of calculating attorneys' fees awards in the Fifth Circuit. Rather, the undersigned will take into account the necessary factors when determining the appropriate amount of attorneys' fees.

## Analysis

I.   <u>Plaintiff is not entitled to an award under 28 U.S.C. § 2412(b).</u>

Plaintiff seeks to have his fees computed using his lawyer's market hourly rate of $445 per hour, pursuant to 28 U.S.C. § 2412(b). The Court therefore must first

resolve whether Plaintiff is entitled to fees under 28 U.S.C. § 2412(b) or only under 28 U.S.C. § 2412(d).

   A.     *The 28 U.S.C. § 2412(b) standard.*

The Fifth Circuit has held that the standard to determine whether attorneys' fees are appropriate under 28 U.S.C. § 2412(b)'s common-law exception is whether the losing party – here, the Commissioner – "has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Baker*, 839 F.2d at 1081 (internal quotation marks omitted).

Citing a case discussing the standard for awarding fees as a sanction under the courts' inherent power and not the EAJA, the Commissioner seeks to limit a showing of "bad faith" for Section 2412(b) purposes to circumstances in which the Court "finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 2005) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). But, although "[m]ost courts have applied the 'bad faith' exception very narrowly," *Baker*, 839 F.2d at 1080, the decisions of courts in the Fifth Circuit stating and applying Section 2412(b)'s standard of requiring "bad faith, vexatiously, wantonly or for oppressive reasons" have not equated this standard with, or limited it to, this stringent and narrow standard for inherent-power sanctions stated in *Boland,* 41 F.3d at 1005, *see, e.g.*, *Perales*, 950 F.2d at 1070-71; *Sanchez*, 870 F.2d at 293-95; *Baker*, 839 F.2d at 1080-82.

Notably, the 1995 *Boland* decision postdates the Fifth Circuit's *Baker*, *Sanchez*, and *Perales* decisions and was following and applying the Supreme Court's 1991 decision in *Chambers v. NASCO, Inc.* The *Chambers* decision held that "a court may

-10-

assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" 501 U.S. at 45-46 (quoting *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974))). But the *Chambers* decision itself then stated that, apparently by way of example, "[i]n this regard, if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party, *Universal Oil* [*Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)], as it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order,' *Hutto* [*v. Finney*, 437 U.S. 678, 689, n.14 (1978)]." *Id.* at 46 (footnote omitted). The Supreme Court further explained that, "[i]n this regard, the bad-faith exception resembles the third prong of Rule 11's certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper 'is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" *Id.* at 46 n.10.

*Baker*'s Section 2412(b) standard – that fees are appropriate where the losing party "has acted in bad faith, vexatiously, wantonly or for oppressive reasons," *Baker*, 839 F.2d at 1081 (internal quotation marks omitted) – is consistent with the Supreme Court's statements in *Chambers* and derives from the same standard that the Supreme Court set forth in 1974 in *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 129 (1974), and ultimately followed in *Chambers*. The Supreme Court in *Chambers* cited its earlier decisions that follow *F.D. Rich* and that themselves do not

suggest that the bad-faith or common-law exception can be met only by showings of fraud on the court or the very temple of justice's having been defiled.

For example, the *Aleyska* decision, which the *Chambers* Court quoted for the general standard, stated that "a court may assess attorneys' fees for the 'willful disobedience of a court order ... as part of the fine to be levied on the defendant(,) []; or when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons....' *F.D. Rich Co.*, 417 U.S., at 129, 94 S.Ct., at 2165 (citing *Vaughan v. Atkinson*, 369 U.S. 527, 82 S. Ct. 997, 8 L. Ed. 2d 88 (1962)); *cf. Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580, 66 S. Ct. 1176, 1179, 90 L. Ed. 1447 (1946)." *Aleyska*, 421 U.S. at 258-59. But the *Aleyska* Court further explained that "none of [these] exceptions is involved" in that case. *Id.* at 259.

The *F.D. Rich* decision itself coined the phrasing of the standard at issue in explaining:

> The American Rule has not served, however, as an absolute bar to the shifting of attorneys' fees even in the absence of statute or contract. The federal judiciary has recognized several exceptions to the general principle that each party should bear the costs of its own legal representation. We have long recognized that attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or where a successful litigant has conferred a substantial benefit on a class of persons and the court's shifting of fees operates to spread the cost proportionately among the members of the benefited class.

417 U.S. at 129-30 (footnotes omitted). *Chambers* also cited for the "bad faith, vexatiously, wantonly, or for oppressive reasons" standard the Court's earlier decisions in *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 n.4 (1968) (per curiam)

("If Congress' objective had been to authorize the assessment of attorneys' fees against defendants who make completely groundless contentions for purposes of delay, no new statutory provision would have been necessary, for it has long been held that a federal court may award counsel fees to a successful plaintiff where a defense has been maintained 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' 6 Moore's Federal Practice, 1352 (1966 ed.)."), and *Hall v. Cole*, 412 U.S. 1, 5 (1973) ("Thus, it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' 6 J. Moore, Federal Practice 54.77(2), p. 1709 (2d ed. 1972); *see, e.g.*, *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 n.4, 88 S. Ct. 964, 966, 19 L.Ed.2d 1263 (1968); *Vaughan v. Atkinson*, 369 U.S. 527, 82 S. Ct. 997, 8 L. Ed. 2d 88 (1962); *Bell v. School Bd. of Powhatan County*, 321 F.2d 494 (CA4 1963); *Rolax v. Atlantic Coast Line R. Co.*, 186 F.2d 473 (CA4 1951).").

And the *Universal Oil* decision, which *Chambers* quotes for the "fraud has been practiced upon it, or that the very temple of justice has been defiled" language on which the Fifth Circuit's *Boland* decision relies, itself does not suggest that it was stating an exclusive test for an award of fees under the courts' inherent power. Rather, the *Universal Oil* Court explained:

> The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question. The power to unearth such a fraud is the power to unearth it effectively. Accordingly, a federal court may bring before it by appropriate means all those who may be affected by the outcome of its investigation. But if the rights of parties are to be adjudicated in such an investigation, the usual safeguards of adversary proceedings must be observed. No doubt, if the court finds after a proper

> hearing that fraud has been practiced upon it, or that the very temple of
> justice has been defiled, the entire cost of the proceedings could justly be
> assessed against the guilty parties. Such is precisely a situation where
> 'for dominating reasons of justice' a court may assess counsel fees as part
> of the taxable costs.

328 U.S. at 580 (citations omitted). And the Fifth Circuit, in the 28 U.S.C. § 2412(b)

context, has noted that it has characterized "the Supreme Court's bad-faith cases such

as *Vaughan*" – the 1962 decision that *F.D. Rich* cited in support of its statement of the

"acted in bad faith, vexatiously, wantonly, or for oppressive reasons" standard – "as

allowing attorney's fees 'against defendants whose prelitigation conduct left plaintiff

no alternative but litigation, despite defendants' duty to deal fairly with the respective

plaintiffs.'" *Sanchez*, 870 F.2d at 294 (quoting *Barton v. Drummond Co.*, 636 F.2d 978,

985 (5th Cir. 1981)).

No authority in the 28 U.S.C. § 2412(b) context suggests that the Supreme

Court's 1991 *Chambers* decision of the Fifth Circuit's 1995 *Boland* decision changed

or narrowed the Section 2412(b) standard that the Fifth Circuit set forth and applied

in its 1988 *Baker* decision. *See generally Martin v. Medtronic, Inc.*, 254 F.3d 573 (5th

Cir. 2001) ("[A] panel of this court can only overrule a prior panel decision if such

overruling is unequivocally directed by controlling Supreme Court precedent." (internal

quotation marks omitted)); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th

Cir. 1999) ("It is a firm rule of this circuit that in the absence of an intervening

contrary or superseding decision by this court sitting en banc or by the United States

Supreme Court, a panel cannot overrule a prior panel's decision."); *United States v.

Short*, 181 F.3d 620, 624 (5th Cir. 1999) (explaining that a Fifth Circuit "panel is bound

by the precedent of previous panels absent an intervening Supreme Court case explicitly or implicitly overruling that prior precedent"). Although the Fifth Circuit's *Baker* decision and 1989 *Sanchez* decision predate the *Chambers* decision, the Fifth Circuit's 1992 *Perales* decision was issued after *Chambers* and, for Section 2412(b) purposes, continued to follow the same standard set forth by *Baker* as derived from the Supreme Court's 1974 *F.D. Rich* decision without limiting that standard to showings of fraud on the court or the very temple of justice's having been defiled: "Section 2412(b) incorporates the 'American rule' for fee-shifting, which permits a fee award only when the losing party acted 'in *bad faith*, vexatiously, wantonly, or for oppressive reasons.'" *Perales*, 950 F.2d at 1071 (quoting *F.D. Rich*, 417 U.S. at 129; emphasis in original). So, for that matter, did other Fifth Circuit decisions describing the standard for inherent-power sanctions in the years immediately after the *Chambers* decision. *See, e.g.*, *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 342 (5th Cir. 1993) (citing *Chambers*); *Rogers v. Air Line Pilots Ass'n, Int'l*, 988 F.2d 607, 615-16 (5th Cir. 1993) (citing *F.D. Rich*); *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 448 (5th Cir. 1992) (citing *Chambers* and *F.D. Rich*).

Accordingly, the undersigned concludes that, in the Fifth Circuit, the specific standard for the "bad faith" that Section 2412(b) requires for the common-law exception can be met by a showing of actions that are taken in bad faith or vexatiously or wantonly or for oppressive reasons. *See Baker*, 839 F.2d at 1081. This is a disjunctive standard that a claimant can meet by showing one of these four types of conduct. *See, e.g.*, *Estate of Merkel v. United States*, No. 3:06-cv-1891-D, 2009 WL

2002902, at *4 (N.D. Tex. July 9, 2009).

In *Baker*, for example, having announced the proper standard for the Section 2412(b) common-law exception, the Fifth Circuit described the basis of the claimant's bad-faith assertions as follows:

> Phillips' bad-faith claim is based upon the fact that the tape recording of her hearing before the administrative law judge ("ALJ") was lost, and, Phillips alleges, both the Secretary and Administrative Appeals Council deliberately concealed this fact. She argues first that by affirming the decision of the ALJ without this tape, the Appeals Council violated its duty to review the record. *See* 20 C.F.R. 404.976(b) and 404.979; *Carry v. Heckler*, 750 F.2d 479 (5th Cir. 1985). Phillips further argues that without the tapes, the Secretary knew or should have known that the district court would have to remand the case for additional hearings if Phillips filed the claim. But instead of initiating additional proceedings *sua sponte*, the Secretary attempted to conceal the error even after the case was in district court, and requested extensions to "develop the record," knowing that the tapes could not be located. Phillips contends that this behavior merely compounded the error and created unnecessary delay and litigation costs. Finally Phillips claims that the Secretary's refusal to recognize her as a prevailing party and pay court costs after she was granted benefits in a second administrative proceeding also constitutes bad faith.

*Baker*, 839 F.2d at 1081-82. The Court of Appeals reversed the district court's denial of a Section 2412(b) award because "[t]he Social Security Act requires that all decisions of the Appeals Council be based upon 'the evidence adduced at the hearing,' 42 U.S.C. § 405(b)"; "[f]ederal regulations further require that the Appeals Council review all the evidence in the hearing record"; "[t]he Appeals Council nevertheless upheld the denial of benefits without reviewing the tape, a fact which the Secretary does not dispute"; "the Appeals Council failed to fulfil this statutory duty when it affirmed the ALJ, perfunctorily and automatically, without reviewing all the evidence"; and "for purposes

of awarding attorneys' fees this constitutes bad faith in cases in which the Secretary, after suit is filed, determines that benefits should have been granted," where, "[c]learly, had the Appeals Council reviewed the tape initially, as was its duty, there would have been no litigation in this case." *Id.* at 1082.

Likewise, in *Texas Clinical Labs, Inc. v. Johnson*, United States District Judge Sam A. Lindsay found a Section 2412(b) bad-faith fee award appropriate, explaining:

> Section 2412(b) of the EAJA authorizes an award of attorney's fees at market rates against a losing party who acted in bad faith, vexatiously, wantonly or for oppressive reasons. *Perales v. Casillas*, 950 F.2d 1066, 1071 (5th Cir. 1992). The government argues that there is no evidence that it conducted itself with bad faith throughout this litigation because the magistrate judge improperly determined that DHHS needed "objective evidence" to support the 35 mile per hour figure. The court determines that whether the government "needed" to produce objective evidence in support of its figure widely misses the mark.
>
> From the court's point of view, the primary reason that this litigation has persisted for so long is precisely because the government suggested or represented at every stage that it relied upon objective evidence – specifically, 57 carrier surveys – that were never made part of the record. Despite being afforded multiple opportunities to supply the record over the course of two decades with such evidence, the government ultimately admitted that it had no such evidence to produce. Now, the government's latest argument, that its basis for the 35 mile per hour figure was not required to be objective, completely glosses over DHHS's prior actions in this case that incurred the ire of the Fifth Circuit in its 2008 opinion. This is an argument that should have been advanced at the original administrative proceeding before the first ALJ, and, if objective evidence truly was not necessary, there would have been no need for the government to even suggest that it possessed or relied upon other documents such as the 57 carrier surveys in support of the 35 mile per hour figure. The court views such an argument, at this juncture, as irrelevant to justifying DHHS's conduct over the past twenty years.
>
> In light of the court's analysis and determination above in connection with its conclusion that the government was not "substantially justified" in its position to needlessly prolong this litigation, the court can reach no result here other than the government acted in bad faith.

No. 3:06-cv-1861-L, 2011 WL 3330889, at *8 (N.D. Tex. July 29, 2011); *see also Batson v. Neal Spelce Assocs., Inc.*, 805 F.2d 546, 550 (5th Cir. 1986) ("The standards for bad faith are necessarily stringent. A party should not be penalized for maintaining an aggressive litigation posture. But advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto." (citations and internal quotation marks omitted)).

But, in his briefing and again at oral argument, Plaintiff's counsel has made clear that he believes that he has made the requisite showing that the Commissioner's acted "wantonly" or "vexatiously." The undersigned has not located no case law in this jurisdiction defining "wantonly" or "vexatiously" in a Section 2412(b) context, and the parties have not pointed the Court to any such decisions. The undersigned also notes that, "[b]ecause EAJA is a partial waiver of sovereign immunity, it must be strictly construed in the government's favor." *Texas Food Indus. Ass'n v. United States Dep't of Agriculture*, 81 F.3d 578, 580 (5th Cir. 1996).

The Supreme Court has, in the context of a 42 U.S.C. § 1983 civil rights claim, explained "the common law meaning of 'wanton' in some detail: 'Wanton means reckless – without regard to the rights of others.... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the

peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.'" *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (quoting *Smith v. Wade*, 461 U.S. 30, 39 n.8 (1983); internal quotation marks and citation omitted)).

And, in an unpublished decision in the context of common-law attorneys' fee awards, the Fifth Circuit has held that acting "'without justification' qualifies as vexatious behavior that can support the award of attorneys' fees by a federal court." *Seals v. Herzing Inc.-New Orleans*, 482 F. App'x 893, 897 (5th Cir. 2012) (quoting *Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650, 658 (5th Cir. 2000)). Likewise, in the context of the Hyde Amendment providing for awards of fees in a criminal case "where the court finds that the position of the United States was vexations, frivolous, or in bad faith," the Fifth Circuit has distinguished "vexatiousness" from "confusion and sloppiness." *United States v. Truesdale*, 211 F.3d 898, 908, 909 (5th Cir. 2000); *cf. Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 419, 421 (1978) (explaining that "the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him" under 42 U.S.C. § 2000e-5(k) by a prevailing defendant in a Title VII action, but also noting "that in enacting § 706(k) Congress did not intend to permit the award of attorney's fees to a prevailing defendant only in a situation where the plaintiff was motivated by bad faith in bringing the action" because, "if that had been the intent of Congress, no statutory provision would have been necessary, for it has long been established that even under the American common-law rule attorney's fees may be

awarded against a party who has proceeded in bad faith").

But decisions of courts in other circuits have more fully defined the contours of what a showing of acting "wantonly" or "vexatiously" in the 28 U.S.C. § 2412(b) context requires.

The United States Court of Appeals for the Seventh Circuit discussed the meaning of "wantonly" in a case in which the district court "had ruled that the government to be liable for payment of the plaintiff's attorneys' fees need only have acted 'wantonly' in resisting the suit, which [the district judge] defined as 'causelessly, without restraint, and in reckless disregard of the rights of others.'" *Stive v. United States*, 366 F.3d 520, 521 (7th Cir. 2004). The Court of Appeals observed that "wantonly" does stand as part of "the canonical formula for the bad-faith exception to the American rule" stated in *F.D. Rich* and *Chambers*; that "when one looks carefully at [the district judge's] definition of 'wantonly,' one sees that the key term is 'reckless disregard' and one is reminded that recklessness is frequently in the law a near synonym for intentionality"; and that "[r]ecklessly making a frivolous claim is treated as bad faith within the meaning of the American rule in *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002); *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001), and *Primus Automotive Financial Services, Inc. v. Batarse*," 115 F.3d 644, 648-49 (9th Cir. 1997). *Stive*, 366 F.3d at 521-22 ("The government doesn't like 'wantonly' and points to language in other opinions which suggests that deliberate misconduct must be shown. .... There is less to this apparent tension in the case law than meets the eye. *Chambers* itself used the identical formula, 'wantonly' and all, that

our court in *Muslin* had quoted from an earlier Supreme Court opinion. 501 U.S. at 45-46, 111 S. Ct. 2123. Indeed, it is the canonical formula for the bad-faith exception to the American rule."). The Seventh Circuit then reversed the district court's Section 2412(b) fee award, explaining: "Whatever the precise standard for an award of attorneys' fees under the American rule, it is not close to being satisfied in this case. A defendant normally has a right to defend, rather than having to keel over just because a suit has been filed against him. There are utterly frivolous defenses, as we know from tax-protester cases, but the defense in this case was not frivolous. Nor was it improperly motivated." *Id.* at 522.

The United States Court of Appeals for the Ninth Circuit likewise has addressed whether reckless conduct meets the common-law standard incorporated into Section 2412(b). Following its decisions in *Fink* and *Primus*, the Ninth Circuit has explained that, "[t]he EAJA's explicit incorporation of the common law in its attorney's fees provision is a clear indication that in all cases, including those sounding in tort, we hold the government to the same standard of good faith that we demand of all non-governmental parties"; that, "[u]nder the common law, [a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent"; that "[m]ere recklessness does not alone constitute bad faith," and, "rather, an award of attorney's fees is justified when reckless conduct is combined with an additional factor such as frivolousness, harassment, or an improper purpose"; that "[a] frivolous case is one that is groundless ... with little prospect of success; often brought to embarrass or annoy the

defendant"; and that a "case is frivolous when the government's position was foreclosed by binding precedent or so obviously wrong as to be frivolous." *Rodriguez v. United States*, 542 F.3d 704, 709-10 (9th Cir. 2008) (citations, footnote, and internal quotation marks omitted). The Ninth Circuit further explained that, although "[t]he government suggests that an argument must be both objectively and subjectively frivolous," the Ninth Circuit "previously required only that an argument be objectively frivolous." *Id.* at 710 n.4 (citing *United States v. Sherburne*, 249 F.3d 1121, 1126 n.4 (9th Cir. 2001) ("Unlike the term 'frivolous,' the term 'vexatious' has both a subjective and an objective component.")); *see also Fink*, 239 F.3d at 994 (holding that "an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power").

And the United States Court of Appeals for the First Circuit has held that, to invoke the common-law exception "under a claim of 'vexatious' conduct, the moving party must demonstrate that the losing party's actions were 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Dubois v. United States Dep't of Agriculture*, 270 F.3d 77, 80 (1st Cir. 2001) (quoting *Local 285 v. Nonotuck Res. Assocs.*, 64 F.3d 735, 737 (1st Cir. 1995)). The First Circuit has held that, accordingly, "subjective bad faith is not a prerequisite to a fee award." *Local 285*, 64 F.3d at 737.

And, in a pre-*Chambers* decision, the Fifth Circuit explored the rationale for the common-law exception to the American Rule as set forth in *F.D. Rich* and, in so doing,

shed some light of requirements for showing "vexatiousness":

> The purpose of this exception is to prevent abuse of the court system by parties which can best their opponents by simply spending time and attorneys' fees in dilatory litigation. For this reason, we do not accept Merchants' theory that attorneys' fees could be considered only if permitted under Louisiana law as damages for conversion. The principle of compensation based on vexatiousness applies whenever the federal courts are made the tool of improper conduct, regardless whether state or federal law forms the rule of decision. Either the lack of legal foundation or the abusive nature of litigation tactics employed by a party could support an award of attorneys' fees against it. Defeat at trial, however, is not alone sufficient to justify a fee award to an opponent under the equitable rule.

*In re Owners of Harvey Oil Ctr.*, 788 F.2d 275, 279 (5th Cir. 1986).

Available authority, then, suggests that the wantonness and vexatiousness standards are different and distinct from a finding of "bad faith" or conduct for oppressive reasons but no less stringent. Courts have held that mere recklessness does not meet the required showing, without more, such as taking a frivolous position, harassment, or acting with an improper purpose, and that, although acting "vexatiously" does not require subjective bad faith, it does require some improper conduct, including actions that are frivolous, unreasonable, or without foundation.

And, absent direct evidence of subjective bad faith or ill intent, courts have generally found a Section 2412(b) award appropriate in instances of sustained conduct by the government in violation of its duties, as in *Baker*. But, even in cases of repeated indignities visited upon a person making a claim to, or defending a claim by, a governmental agency, courts have also held that the high bar for a Section 2412(b) fee award was not met. For example, in *Britton v. United States*, 587 F. Supp. 834 (W.D.

-23-

Mo. 1984), a case in which a corporate bookkeeper's action to obtain a refund of a penalty assessment by the Internal Revenue Service was dismissed by stipulation, the district court explained:

> It is the opinion of this court that defendant's actions, although deplorable, do not amount to bad faith or vexatious and wanton conduct. Instead, this case presents a classic example of bureaucratic indifference and callousness. This entire saga of taxpayer suffering could have been avoided or abbreviated if plaintiff had received actual notice of the proposed assessment and lien. Instead, the gears of bureaucracy creaked into motion without warning, and plaintiff became grist for the IRS mill. A reasonable approach in this situation would have been to send at least the first notice to plaintiff by both and regular and certified mail, a procedure this court regularly employs when it is important that the recipient learn of a proposed action. Defendant's failure to follow such a simple procedure suggests a cavalier attitude toward matters of central importance to the financial well-being of taxpayers. Even more offensive is the refusal of anyone at the IRS to investigate plaintiff's documented claim that he was not a person responsible for payment of the withholding taxes. Fundamental due process means, at the very least, notice and an opportunity to be heard. In denying these rights to plaintiff, defendant acted without substantial justification and wronged this plaintiff; an award of fees and expenses under the EAJA is entirely justified.

587 F. Supp. at 840.

> B.    *Plaintiff did not make the required showing under 28 U.S.C. § 2412(b).*

Plaintiff asserts that the common-law exception standard is met here "due to the unusual and egregious nature of the Agency's pre-lawsuit conduct toward" Plaintiff. Dkt. No. 21 at 2. Plaintiff contends that, "[t]o recover EAJA fees at market rates, a disability claimant must prove either that the ALJ or that the Appeals Council has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'" but "need not prove both." Dkt. No. 21 at 4 (citing *Baker*, 839 F.2d 1075). Plaintiff further asserts

-24-

that, "[u]nder the unusual facts here, however, both the ALJ and the [Appeals Council] acted in bad faith." *Id.*

Plaintiff notes that "[t]he Social Security Administration is '[p]erhaps the best example of an agency' that is based on the truth-seeking or inquisitorial model of decision-making, rather than the adversarial model governing normal litigation," such that it "must not treat its claimants at arms length or act as the claimant's litigation opponent." *Id.* (quoting and citing *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000)). As Plaintiff's fee application explains, the United States Supreme Court has held that "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits" and further that the Appeals "Council's review is similarly broad." *Sims*, 530 U.S. at 111; *see also Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000) ("The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking. It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. The regulations also make the nature of the SSA proceedings quite clear. They expressly provide that the SSA 'conducts the administrative review process in an informal, nonadversary manner.'" (citing *Sims*, 530 U.S. 103, and quoting 20 C.F.R. § 404.900(b))). And, as Plaintiff notes, "[t]he Fifth Circuit also imposes a duty on an ALJ 'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

Against that background, Plaintiff argues that the Social Security Administration engaged in bad-faith, vexatious, and/or wanton conduct based on "long settled legal principles that led the Commissioner to concede this case in court 19 months after the ALJ violated them and at least 12 months after the ALJ's misconduct was called to the Appeals Council's attention." Dkt. No. 21 at 5. Specifically, Plaintiff points to the undisputed legal requirements in cases such as Plaintiff's for the ALJ "to invite a qualified [vocational expert ("VE")] to the [administrative] hearing, the need to adduce VE testimony via comprehensive hypotheticals, and the claimant's right to hear and cross-examine the VE." *Id.* at 6; *see also Boyd v. Apfel*, 239 F.3d 698, 707-08 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 435-36 (5th Cir. 1994); *Fields v. Bowen*, 805 F.2d 1168 (5th Cir. 1986).

In this case, it is undisputed that the ALJ did not do any of that. *See* Dkt. No. 12-3 at 25-47; Dkt. No. 24 at 4. But the ALJ's decision stated that he did, and the ALJ based his decision at step five that Plaintiff is not disabled on the non-existent vocational expert testimony:

> To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert indicated that given all of these factors the individual would be able to perform the requirements of representative occupations such as a waxer, the Dictionary of Occupational Titles (DOT) code is listed as 779.687-038. A second job is that of an addresser, the Dictionary of Occupational Titles (DOT) code is listed as 209.587-010. The third job is that of an assembler, the Dictionary of Occupational Titles (DOT) code is listed as 734.687-018 (Exhibit 8E/1).
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the

Dictionary of Occupational Titles.

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

Dkt. No. 12-3 at 20 (emphasis added).

The Commissioner does not defend the ALJ's reliance on non-existent VE testimony but rather concedes that "[t]his was obviously a mistake, as no vocational expert testified at the administrative hearing," and notes that "the certified administrative record itself clearly evidences the absence of vocational expert testimony." Dkt. No. 24 at 4, 6; *see also id.* at 9 (referring to "the undisputed mistake regarding a lack of vocational expert testimony"). Plaintiff replies:

> The Agency has characterized the ALJ's conduct as "obviously a mistake," but the better way to put it is that it was obviously erroneous. It was a "mistake" only if it was inadvertent – as opposed to wanton (i.e. reckless or consciously indifferent) or vexatious. We are unable to imagine – and Defendant has not described – a plausible explanation for how this occurred inadvertently. If that was the case, one would expect to see the sequence of events spelled out in a highly apologetic affidavit signed by ALJ Curran. But the Agency has elected to offer no evidence beyond the transcript itself.
>
> For there to be an innocent explanation of the ALJ's conduct, one would have to conclude that when writing and signing the Decision, he had forgotten taking all of the following steps in Prince's case: (i) choosing not to ask a VE to attend the hearing, (ii) presiding at the hearing at which Prince was the only witness present, (iii) electing at the hearing's close not to reconvene it at a later date for the purpose of taking supplemental VE testimony, and (iv) writing and signing the Decision itself. All of these steps required conscious thought at different times. Moreover, the hearing was recorded and this was available to him to review at any time.
>
> Particularly damning to the ALJ are his own words in the Decision. The only place where the three occupations the ALJ based his step-five

finding upon – the jobs of waxer, addresser, and assembler – appear of record is on Exhibit 8E, the vocational "worksheet" prepared by a non-expert state-agency employee months before the hearing. It is almost inconceivable that someone of right mind could study Exhibit 8E, extract the information from it, put that into the Decision, and then write up the rest of the step-five finding as though those jobs actually came from the mouth of a vocational expert at the hearing in response to questions asked by the ALJ. The ALJ knew otherwise, but papered over the hole in the evidence in order to dispose of the case right then, rather than prolong the proceedings by convening the supplemental hearing that was "obviously" required by *Bowling*, *Boyd*, and *Fields et al.* This is all one needs to know in order to find that the ALJ "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" toward Prince.

Dkt. No. 25 at 3-4 (footnote and citations omitted).

Plaintiff further asserts that the Appeals Council "either affirmed the ALJ's Decision with actual knowledge of the misconduct described above or it failed to discern the misconduct despite Prince's lawyer calling it to the [Appeals Council]'s attention in writing after the hearing." Dkt. No. 21 at 10.

The administrative record reflects that, as Plaintiff contends, "[s]hortly after Prince filed his request for review of the hearing decision, Prince's hearing counsel, Carey Thompson, wrote a letter apprising the [Appeals Council] as follows: 'The 'ALJ states in his decision explicitly ... that he consulted a vocational expert concerning the availability of jobs given the RFC. However no vocational expert was present at this hearing.'" Dkt. No. 21 at 16 (quoting Dkt. No. 12-3 at 9). Plaintiff's counsel's letter characterizes the ALJ's conduct as "egregious" and requests "immediate remand or award and change of ALJ" on account of it. Dkt. No. 12-3 at 9. This letter is included in the administrative record with the Appeals Council's notice of denial dated almost 12 months after Plaintiff's counsel's letter was sent. *See id.* at 1-9. And the

Commissioner concedes that, in addition to Plaintiff's request for review, Plaintiff "submitted additional documentation to the Appeals Council, including medical records from Ronnie Shade, M.D., a physician's statement from Dallas County Dept. of Health and Human Services, and correspondence from Plaintiff's counsel stating, among other things, that no vocational expert was present at the hearing." Dkt. No. 24 at 4.

Plaintiff's fee application notes how the Supreme Court has described the Appeals Council's role:

> [The regulations] expressly provide that the SSA "conduct[s] the administrative review process in an informal, nonadversary manner." 20 CFR § 404.900(b) (1999). They permit – but do not require – the filing of a brief with the Council (even when the Council grants review), § 404.975, and the Council's review is plenary unless it states otherwise, § 404.976(a). See also § 404.900(b) ("[W]e will consider at each step of the review process any information you present as well as all the information in our records"). The Commissioner's involvement in the Appeals Council's decision whether to grant review appears to be not as a litigant opposing the claimant, but rather just as an adviser to the Council regarding which cases are good candidates for the Council to review pursuant to its authority to review a case sua sponte. See §§ 404.969(b)-(c); *Perales*, *supra*, at 403, 91 S.Ct. 1420. The regulations further make clear that the Council will "evaluate the entire record," including "new and material evidence," in determining whether to grant review. § 404.970(b). Similarly, the notice of decision that ALJ's provide unsuccessful claimants informs them that if they request review, the Council will "consider all of [the ALJ's] decision, even the parts with which you may agree," and that the Council might review the decision "even if you do not ask it to do so." App. 25-27. Finally, Form HA-520, which the Commissioner considers adequate for the Council's purposes in determining whether to review a case, see § 422.205(a), provides only three lines for the request for review, and a notice accompanying the form estimates that it will take only 10 minutes to "read the instructions, gather the necessary facts and fill out the form." The form therefore strongly suggests that the Council does not depend much, if at all, on claimants to identify issues for review. Given that a large portion of Social Security claimants either have no representation at all or are represented by non-attorneys, see *Dubin*, *supra*, at 1294, n. 29, the lack of such dependence is entirely understandable.

*Sims*, 530 U.S. at 111-12. Plaintiff contends that a bad-faith finding is appropriate

where, "here, the [Appeals Council] was actually apprised of the ALJ's plain 'error' but affirmed anyway"; where "[t]he [Appeals Council] could have easily and quickly confirmed the truth of counsel's assertions by simply comparing the ALJ's decision to the hearing tape"; where, "[i]f the [Appeals Council] reviewed the tape and affirmed anyway, then it knowingly affirmed a plainly unlawful denial of disability benefits"; where, "[a]lternatively, if it failed to review the tape despite having the statutory duty to do so, it is guilty of wanton or oppressive or 'bad faith' conduct" as the Fifth Circuit found in *Baker*; where, "when the [Appeals Council] finally acted, it perfunctorily affirmed the ALJ via a form letter that fails to acknowledge or mention the ALJ's obvious violation of law"; and where Plaintiff "lost his home due to foreclosure while he was awaiting disposition of his Social Security disability claim." Dkt. No. 21 at 12-13 (emphasis in original removed).

In response, the Commissioner acknowledges Plaintiff's request for review and Plaintiff's counsel's letter and admits that the letter was sent to and received by the Appeals Council but notes that, "[i]n denying Plaintiff's request, the Appeals Council stated that it considered the additional evidence listed in the 'Order of Appeals Council' ([Dkt. No. 12-3 at] 1, 5)," which "evidence consisted of Dr. Shade's medical records, as well as the May 2012 physician's statement ([Dkt. No. 12-3 at] 5)," but, "[n]otably, the Appeals Council did not notify Plaintiff that it had received and considered the correspondence from Plaintiff's counsel regarding a lack of vocational expert testimony." Dkt. No. 24 at 4. At oral argument, the Commissioner's counsel suggested that Plaintiff's counsel missed an opportunity by not following up with the Appeals

Council after receiving the notice of denial that did not mention counsel's letter.

The Commissioner finally argues that "[m]istakes can happen occasionally, and Defendant concedes that mistakes were made in the instant case with respect to the absence of vocational expert testimony," but that " Defendant took actions to remedy these mistakes." *Id.* at 8. The Commissioner argues that "Plaintiff has offered no argument, nor any evidence, to support his claim that such oversight constitutes a fraud upon the court or a defilement of justice" and that, "[a]ccordingly, none of Plaintiff's claims regarding alleged bad faith rise to the level of fraud upon the court for which a punitive award of enhanced attorneys' fees would be warranted." *Id.*

Plaintiff, in reply, notes that the Commissioner "has failed to take a position as to whether the [Appeals Council] officer who signed the denial of review read the letter from Prince's lawyer (Carey Thompson), before refusing to either summarily remand or review the ALJ's decision in full." Dkt. No. 25 at 5. Plaintiff contends that, "if the [Appeals Council] read the letter and nevertheless acted to force the destitute Prince to file suit to gain the remand it now admits he was 'obviously' entitled to, then the [Appeals Council] acted in about as wanton or vexatious a manner as any appellate tribunal conceivably can." *Id.* Plaintiff further contends that Plaintiff's counsel's letter was faxed to the Appeals Council along with Plaintiff's request for review – as the fax legend at the top of those documents as attached to the Appeals Council's denial confirm, *see* Dkt. No. 12-3 at 8-9 – and that the Social Security regulations require the Appeals Council to "read and consider the documents the claimant submits to explain why it believes the [Appeals Council] should remand or at least review the case," Dkt.

No. 25 at 6 (citing and quoting 20 C.F.R. §§ 404.900(b), 404.968(a), 404.970).

And, Plaintiff asserts, whether required or not, the Appeals Council's denial to Plaintiff stated that, "[i]n looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council," "considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence of record," and "found that this information does not provide a basis for changing the Administrative Law Judge's decision." Dkt. No. 12-3 at 1-2. Plaintiff contends that, while "[t]he Agency now concedes that the ultimate conclusion stated above was 'obviously' incorrect," the Commissioner "takes the astonishing position that it is not required to actually do the investigation its notice to Prince states that it did." Dkt. No. 25 at 7.

Plaintiff argues that he has shown vexatious and wanton conduct, in line with the Fifth Circuit's decision in *Baker*, where "the Fifth Circuit's main point in *Baker* is this: the [Appeals Council] must take the investigatory steps the law requires in deciding whether to reverse and remand an ALJ's decision that it is asked to review; and, for purposes of 'bad faith' liability for the claimant's fees, it should be charged with knowledge of those things that compliance with the law would necessarily have revealed" and where, when "those steps would have clearly demonstrated and open-and-shut case for remand, but the claimant is forced to sue in order to gain that result, then the [Appeals Council]'s conduct will be deemed wanton, vexatious, or in bad faith, and the claimant compensated at market rates." *Id.* at 11.

Plaintiff further replies that, while "Defendant points out that the [Appeals

Council] reviews the record more thoroughly when it grants review than when it denies review," Plaintiff's "case is one that required the [Appeals Council] to do nothing more than read the ALJ's decision, a 10-sentence letter from Prince's lawyer pointing out the egregious falsehoods supporting the adverse step-five finding, and listen to a 20-minute recording," all of which, Plaintiff asserts, the Social Security regulations required the Appeals Council to do, at the least, and which the Appeals Council's "notice to Prince indicates that it had in fact done." *Id.*

The Commissioner also opposes a Section 2412(b) award because, "[u]pon review of Plaintiff's Brief, in which Plaintiff pointed out that no vocational expert testified at the hearing, Defendant filed an Unopposed Motion to Remand" and so took actions in this Court to remedy the mistakes made by the ALJ and the Appeals Council. Dkt. No. 24 at 5, 8; *see also id.* at 9 ("Of course, as Plaintiff knows well, an efficient remand occurred only because Defendant herself proposed a Motion to Remand to re-evaluate the case and conduct a new hearing if necessary."). The Commissioner's counsel also argued at oral argument that briefing might have been avoided had Plaintiff specifically highlighted the error in Plaintiff's complaint filed with this Court or had Plaintiff's counsel called the Commissioner's counsel after the Commissioner appeared and answered and raised with the Commissioner's counsel the issue on which the Commissioner eventually sought a voluntary remand.

And the Commissioner relies on the district court opinion in *Romero v. Astrue*, No. 2:07-cv-234-JTT-JDK, Dkt. No. 53 (W.D. La. Oct. 14, 2011), *rec. adopted* Dkt. No. 54 (W.D. La. Mar. 21, 2012), on remand from the Fifth Circuit for failing to consider

Section 2412(b) in the first instance, *see Romero v. Astrue*, 413 F. App'x 747 (5th Cir. 2011). In that case, the magistrate judge found no bad faith for Section 2412(b) purposes where "[t]here is no indication from the argument asserted by counsel or from the record itself that the Commissioner acted deliberately to either conceal the supplemental hearing transcript, conceal the fact that it was missing or prevent Romero from obtaining benefits" and "no evidence that any of the alleged acts were taken for the purpose of harassing Romero or his attorney or otherwise obstructing justice." *Romero*, Dkt. No. 53 at 4. The magistrate judge further explained that, "[w]hile there is certainly no doubt that the Commissioner was extremely careless and/or neglectful in assembling the record, there is no also doubt that the Commissioner made a concerted effort to correct the errors within a reasonable period of time. .... Though unfortunate for Mr. Romero who was the real victim as he was without benefits during the pendency of the matter, the Commissioner's actions do not amount to bad faith." *Id.* at 4-5.

Plaintiff replies that the ALJ's and Appeals Council's conduct "left Mr. Prince no choice but to file suit, necessitating that he give away 25% of any past-due benefits he would otherwise receive on remand in order to retain counsel" and that the Commissioner filed her Unopposed Motion to Remand only after she "previously (and on the same day as filing the administrative transcript) signed and filed [her] Answer denying that there was a valid basis to set aside the ALJ's decision." Dkt. No. 25 at 1, 8. Plaintiff suggests that Defendant's counsel should not have signed "the Answer – the act that necessitated that Prince prepare Plaintiff's Brief on the merits – without

initiating remand immediately." *Id.* at 10.

After careful study of the briefing, the record, and the applicable law, the undersigned is compelled finds that Plaintiff has not shown that the 28 U.S.C. § 2412(b) standard is met here. Though not as stringent as the Commissioner would have it, the common-law standard incorporated by Section 2412(b) is very difficult to meet, and Plaintiff has not done so on this record.

The undersigned understands that Plaintiff's counsel may be frustrated that some of this lack of evidence stems from the Commissioner's not presenting affidavits from the ALJ or the Appeals Council to explain how and why the ALJ signed the decision that he did and explain what happened at the Appeals Council, where Plaintiff's ability to obtain such testimony by any other means is not at all clear. But Plaintiff, not the Commissioner, bears the burden of making the required Section 2412(b) showing, and that showing was not made here as explained below.

The undersigned believes that the Commissioner should take little pride in what occurred here and should regard this case as a cautionary tale. The undersigned appreciates that the Social Security Administration and its Administrative Law Judges and Appeals Council handle a huge volume of disability insurance benefits and Supplemental Security Income claims. *See generally Barnhart v. Thomas*, 540 U.S. 20, 28-29 (2003) (noting that the Social Security hearing system is probably the largest adjudicative agency in the western world); *Califano v. Boles*, 443 U.S. 282, 283 (1979) ("As an exercise in governmental administration, the social security system is of unprecedented dimension; in fiscal year 1977 nearly 150 million claims were filed.").

But the ALJ here conducted a hearing without calling a vocational expert to testify, as the Commissioner concedes that he was obviously required by law to do, and then wrote (perhaps) and (at least) signed and issued a decision describing and critically relying on non-existent vocational expert testimony. Under all the circumstances here, this cannot be characterized as a merely innocent mistake or negligence, where the ALJ presided at the administrative hearing and was responsible for having a vocational expert attend and testify and, with the recording of the hearing available, could have easily – and should have – confirmed whether a vocational expert actually testified as required before issuing the decision to deny benefits.

The ALJ may have simply too quickly signed off on a decision written by a decision-writer without checking the record to ensure that the vocational expert testimony on which his decision to deny benefits relies actually existed. The ALJ had a duty to sign and issue a decision that accorded with the hearing over which he actually presided. Failing to do so and instead signing a decision that described and relied on nonexistent testimony was reckless and not merely an innocent mistake, negligence, a mere factual error such as confusing the name of one doctor with another or misreading a medical record, or simply a legal error akin to citing the wrong standard or misstating the governing standard (such as the *Stone v. Heckler* standard) or even candidly acknowledging the lack of vocational expert testimony but asserting incorrectly that no such testimony was legally required. The ALJ's signing the decision here was conduct in reckless disregard of Plaintiff's rights despite the ALJ's and the Social Security Administration's duties to him.

But, on the record before the Court, the undersigned also cannot find that this conduct amounts to more than mere recklessness, without any basis for finding something more, such as frivolousness, harassment, or acting with an improper purpose. If the ALJ signed the decision without checking the recording of the hearing or his notes from the hearing, he failed, as one charged with a duty to Plaintiff, to exercise due care and diligence to prevent an injury to Plaintiff. But, where the common-law exception must be construed in the government's favor, there is no evidence – even circumstantial evidence – to permit the unfavorable inference of bad faith or fraudulent conduct that Plaintiff wants to draw: that the ALJ deliberately wrote the decision as if vocational expert did testify in order to meet legal rules that the ALJ knew he must follow to deny benefits under the circumstances. That would meet the Section 2412(b) standard, but there is no evidence before the Court to support a specific finding that that is in fact what occurred, as opposed to the other possible explanation. Because the ALJ's decision is written in a manner that would conform to the governing legal requirements for vocational expert testimony if any existed, there is a basis to speculate that the ALJ deliberately crafted the decision to cover up an omission in lining up the required expert testimony and to avoid a supplemental hearing. But, without more, the Court is left with just that – speculation.

Likewise, the Appeals Council had before it a letter from Plaintiff's counsel pointing out the ALJ's decision's reliance on nonexistent vocational expert testimony (which the Commissioner concedes was obviously a mistake) and had access the hearing recording but nevertheless denied review without acknowledging the letter.

The undersigned is compelled to agree with Plaintiff's assertion that it is difficult to see how the Commissioner improves her position as to a Section 2412(b) award by suggesting that the Appeals Council did not read Plaintiff's counsel's letter, which was faxed to the Appeals Council with Plaintiff's request for review and which the Commissioner concedes was sent to the Appeals Council. *See* Dkt. No. 12-3 at 1-9; Dkt. No. 24 at 4. In any event, the Appeals Council was required to review and consider the letter by the Social Security regulations; the Appeals Council reported to Plaintiff that it had reviewed all of his submission (which would include the reasons given in Plaintiff's counsel's letter) before denying Plaintiff's request for review; and the Commissioner's counsel conceded at oral argument that the Appeals Council had a duty to review Plaintiff's counsel's letter.

There is no excuse for the Appeals Council either failing to review or consider the letter or deciding to deny review despite having considered it. And telling Plaintiff that the Appeals Council considered all of his submissions if it did not review his counsel's letter may be reckless. But, if the Appeals Council did in fact overlook the letter in making its decision to deny review, there is no evidence to support a specific finding of bad faith or improper purpose from this omission or conduct or to support a specific finding conduct taken without foundation. And, as with the ALJ's conduct, the Court has nothing but speculation on which to rely to support any finding that the Appeals Council did not simply overlook or misplace the letter when considering Plaintiff's submissions and making its decision to deny review.

As in *Britton* and *Romero*, this is a case in which the defendant's conduct was,

at best, "extremely careless" and, considered as a whole, "deplorable" but does not amount to bad faith or vexatious or wanton conduct. Rather, as in *Britton*, on the record before the Court, the most that the undersigned can find is that "this case presents a classic example of bureaucratic indifference and callousness." 587 F. Supp. at 840.

Accordingly, under 28 U.S.C. § 2412(b), the undersigned finds that Plaintiff has not shown that the Social Security Administration has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, and the undersigned will not use a market rate to determine Plaintiff's attorneys' fee award.

II.    Plaintiff's requested fee award under 28 U.S.C. § 2412(d) is reasonable.

Plaintiff has requested $32,040.00 in attorneys' fees based on 3.4 hours at an hourly rate of $445.00 for Plaintiff's counsel William Fouché, Jr.'s work on the merits in 2013 ($1,513.00); 35.2 hours at an hourly rate of $445.00 for Mr. Fouché's work on the merits in 2014 ($15,664.00); 16.5 hours at an hourly rate of $445.00 for Mr. Fouché's work on Plaintiff's EAJA fee application, including 14 hours devoted to researching "bad faith" legal standards and preparing lengthy legal brief regarding the same ($7,342.50), and 16.9 hours at an hourly rate of $445.00 for Mr. Fouché's work researching and writing Plaintiff's Reply to Defendant's EAJA objections ($7,520.50). *See* Dkt. No. 21 at 15; Dkt. No. 25 at 15. Plaintiff's counsel has submitted itemized statements detailing the time that he devoted to the case and a declaration in support of Plaintiff's application. *See* Dkt. Nos. 21-1, 21-2, & 25-1.

As explained above, the undersigned will not use a market rate to determine

Plaintiff's attorneys' fee award under 28 U.S.C. § 2412(b). And the Commissioner does not challenge the fact that Mr. Prince meets the prerequisites for recovery under 28 U.S.C. § 2412(d), which, as the parties agree, entitles Plaintiff to fees computed at hourly rates of $181.81 for work done in 2013 and $183.83 for work done in 2014. *See* Dkt. No. 21 at 1-2; Dkt. No. 24 at 1-2. Without opposition by the Commissioner, the undersigned finds that Plaintiff is entitled an award of fees under Section 2412(d) at the rates of $181.81 for work done in 2013 and $183.83 for work done in 2014. *See* 28 U.S.C. § 2412(d)(1)(A); *Shalala*, 509 U.S. at 300-02; Murkledove, 635 F.3d at 790.

Mr. Fouché's work summary details tasks done each day, and the total number of hours billed for the day, but does not provide time entries for each individual task. *See* Dkt. Nos. 21-1 & 25-1. The Commissioner objects to the claimed number of hours for certain tasks, attacks several time entries as unreasonable and/or excessive, and requests a total reduction of 21 hours from Plaintiff's request. See Dkt. No. 24 at 2. In each instance, the Commissioner offers an alternative amount of time that she considers reasonable.

First, the Commissioner seeks a reduction from 9.9 hours to 4.9 hours for the work billed on February 26, 2014 and March 22, 2014 for work including a detailed review of the transcript with note taking and writing sections of Plaintiff's Brief pertaining to the standard of review and harmful error rule. *See* Dkt. No. 24 at 8-9. for January 12 and 13, 2013. The Commissioner contends that "Plaintiff's counsel is a very seasoned attorney with many years of experience handing Social Security disability cases" and that, "[a]ccordingly, Defendant respectfully suggests that 9.9 hours for these

tasks are excessive, in light of the undisputed mistake regarding a lack of vocational expert testimony, as well as Plaintiff's counsel's obvious familiarity with the standard of review and harmless error rule." *Id.* at 9. "Defendant notes that Plaintiff's counsel states that when drafting the standard of review and harmful error sections of Plaintiff's Brief he 'borrow[ed] as much as possible (without charge) from prior briefing,'" but Defendant notes that "Plaintiff's counsel nevertheless still seeks reimbursement for this work, as it is specifically listed as billed-for work." Dkt. No. 24 at 9 n.2.

The undersigned notes that Plaintiff's attorney states that he did not charge for incorporating prior briefing concerning the standard of review and harmful error sections of Plaintiff's Brief. Under all the circumstances presented here and based on Mr. Fouché's submissions, the undersigned finds 9.9 hours for work over the course of two days, including a detailed review of the transcript with note taking and writing sections of Plaintiff's Brief pertaining to the standard of review and harmful error rule, to be reasonable and compensable under the EAJA.

Second, the Commissioner seeks a reduction from 16.0 to 10.0 hours for the work billed on April 2, April 3, April 5, and April 6, 2014 for preparing additional arguments in Plaintiff's Brief. *See* Dkt. No. 24 at 9. January 16 and 17, 2013. The Commissioner "notes that Plaintiff bases the alleged reasonableness of the attorney hours claimed on the fact that his case was won 'with unusual speed,'" but the Commissioner asserts that, "as Plaintiff knows well, an efficient remand occurred only because Defendant herself proposed a Motion to Remand to re-evaluate the case and conduct a new

hearing if necessary" and that, "[a]s Plaintiff acknowledges, the Court did not even evaluate the persuasiveness of the multiple arguments made in Plaintiff's Brief." *Id.* (quoting Dkt. No. 21 at 14). The Commissioner contends that "Plaintiff's reliance on Defendant's Unopposed Motion for Remand to support his assertion that Plaintiff's Brief 'covers the four issues presented thoroughly, persuasively, and in comprehensive detail' is unfounded." *Id.* (quoting Dkt. No. 21 at 15).

Plaintiff replies as follows:

> Defendant has devoted three pages to objections that employ this verbal formula:
>
> > On dates __ and ___, Plaintiff billed __ hours for doing primarily __. The Commissioner requests that this time be reduced by __ hours due to counsel's experience and the fact that Prince won only because the Commissioner conceded.
>
> Based on objections such as this, the Agency asks that <u>21.0 hours</u> be cut. In no instance has it explained how it derived its numbers, or why each figure is not somewhat higher or lower. These are arbitrary numbers plucked from thin air.
>
> With no apparent sense of irony, given the Agency's vexatious conduct below, it now characterizes the ALJ's decision and the [Appeals Council]'s subsequent decision to leave it in place as acts of "undisputed mistake." (Was the [Appeals Council]'s decision to deny review not a "dispute" of the mistake? Is the Agency's Answer in court not a further "dispute" of the need for remand?) He implies that a short document pointing this out would have sufficed, forgetting, apparently, that the document of that kind sent to the Agency on 10/30/12 was summarily rejected in a notice that instructed Prince to sue if he disagreed. Having exhausted his administrative remedies, Prince did sue, giving up 25% of his past-due benefits to his lawyer in the process. And when the Agency learned of the suit, even after certifying and filing the administrative transcript that it now describes as revealing "undisputed" error, it filed an Answer denying relief once more.
>
> After the Agency answered, the Court ordered Plaintiff to file his brief. So he did. After all the Agency had put Prince through, the undersigned did what any conscientious lawyer would do under these circumstances: He prepared a brief he hoped would seal off all foreseeable avenues of Agency defense, fully expecting that the Agency would

continue (inexplicably) to fight Prince to the end, as it had done for the better part of two years. Even so, only 33.9 hours were charged for researching and writing Prince's brief, which is 24 pages long, cites numerous authorities, and advances four arguments, along with another 4.7 hours devoted to other tasks necessary to prosecuting the action and advising Prince. So had Agency conduct not triggered the need to take the step of proceeding under the EAJA's rarely invoked "bad faith" provision, Prince's lawyer's total charges would have been 38.6 hours.

Dkt. No. 25 at 12-13 (footnote omitted; emphasis in original).

The undersigned finds that Plaintiff's attorney should not be penalized for drafting a brief raising all the issues that his client needed raised when counsel could not know if the Commissioner would concede error at the briefing stage, after no such concession was forthcoming at the Appeals Council or when the Commissioner filed her Answer and the administrative record in this Court. The undersigned finds the 16.0 hours for work preparing additional arguments in Plaintiff's Brief time to be reasonable and compensable under the EAJA.

Third, the Commissioner seeks a reduction from 14.0 hours to 4.0 hours for the work billed on August 9, 2014 for researching and drafting argument regarding 28 U.S.C. § 2412(b)'s bad-faith or common-law provision in connection with Plaintiff's EAJA Application. *See* Dkt. No. 24 at 10. The Commissioner reports that she "does not object to Plaintiff's counsel researching the prerequisites and legal standards governing 28 U.S.C. § 2412(b)" but that she "does object to the 'work over several days' drafting arguments claiming Plaintiff is entitled to enhanced legal fees due to alleged 'bad faith' conduct." *Id.* The Commissioner objects because "Plaintiff's argument is nothing more than an unsuccessful attempt to turn an admitted mistake regarding the absence of

vocational expert testimony into acts committed in 'bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *Perales*, 950 F.2d at 1071).

The undersigned notes that Plaintiff's counsel candidly explained that Section 2412(b)'s bad-faith "provision is rarely invoked"; that this "is, in fact, the undersigned's first effort to invoke it in more than 12 years handling Social Security appeals in Federal court"; and that "[t]his step has been taken after careful study, due to the unusual and egregious nature of the Agency's pre-lawsuit conduct toward Mr. Prince." Dkt. No. 21 at 2; *see also id.* at 13 ("In 12 years of representing disability claimants in Federal court, this is the only EAJA application the undersigned has ever filed seeking to invoke the 'bad faith' provision."). Plaintiff further replies that "Defendant has cited no authority – and we are aware of none – holding that time devoted to fee disputes arising under § 2412(b) is any less compensable than time devoted to fee disputes involving capped rates under § 2412(d)" and that, "[a]mong the differences between these two provisions is that the 'bad faith' fee is more difficult to win, is rarely litigated, and is advanced against more ardent Government opposition, making the work necessary to win under §2412(b) more difficult than normal, which has been the case here." Dkt. No. 25 at 14.

Under all the circumstances – even though the undersigned recommends denying Plaintiff's Section 2412(b) request, which the undersigned believes to be unsuccessful but far from frivolous – the undersigned does not find Plaintiff's counsel's time spent researching and drafting argument regarding 28 U.S.C. § 2412(b) unreasonable or excessive but rather finds this claimed time to be reasonable and

compensable under the EAJA.

In conclusion, based on a review of Plaintiff's submitted supporting materials, and over the Commissioner's objections, the undersigned finds that the number of hours billed by Plaintiff's attorney – who obtained a favorable decision for his client in this case – for work done on the merits and the ensuing fee application was reasonable and consistent with awards in comparable cases. *See, e.g.*, Dkt. No. 25 at 13, 14 (citing cases). The undersigned finds that Plaintiff has demonstrated that the 38.6 hours billed by Plaintiff's attorney for work done on the merits and 16.5 hours billed for work on Plaintiff's EAJA fee application is reasonable and reimburseable under the EAJA. Plaintiff's attorney also seeks reimbursement for 16.9 hours spent replying to Defendant's objections to Plaintiff's fee application, *see INS v. Jean*, 496 U.S. 154, 164-66 (1990), and the undersigned also finds Plaintiff has demonstrated that these hours devoted to Plaintiff's reply in support of his fee application are reasonable and reimburseable under the EAJA, *compare Sandoval*, 86 F. Supp. 2d at 616-17.

Accordingly, the undersigned calculates the lodestar to be $13,228.90 in attorneys' fees based on 3.4 hours at an hourly rate of $181.81 for Plaintiff's counsel William Fouché, Jr.'s work on the merits in 2013 ($618.15); 35.2 hours at an hourly rate of $183.83 for Mr. Fouché's work on the merits in 2014 ($6,470.82); 16.5 hours at an hourly rate of $183.83 for Mr. Fouché's work on Plaintiff's EAJA fee application in 2014, including 14 hours devoted to researching "bad faith" legal standards and preparing lengthy legal brief regarding the same ($3,033.20); and 16.9 hours at an hourly rate of $183.83 for Mr. Fouché's work in 2014 researching and writing Plaintiff's

Reply to Defendant's EAJA objections ($3,106.73). *See* Dkt. No. 21 at 15; Dkt. No. 25 at 15. For the reasons explained above, the Court does not find that any time should be excluded as excessive, duplicative, unnecessary, or inadequately documented, *see Watkins*, 7 F.3d at 457, and so the total 72 hours claimed by Plaintiff are those reasonably expended on Plaintiff's prevailing claims and fee application. The undersigned further finds no reason, based on any of the *Johnson* factors, to modify the lodestar amount of $13,228.90, as to which there is a strong presumption of the reasonableness. *See Perdue*, 559 U.S. at 552; *Saizan*, 448 F.3d at 800; *Watkins,* 7 F.3d at 457. The undersigned accepts the lodestar amount of $13,228.90 as the appropriate award to Plaintiff under 28 U.S.C. § 2412(d).

## Recommendation

Plaintiff Gregory Charles Prince's Application for Attorneys Fees Under the "Bad Faith" Provision of the Equal Access to Justice Act [Dkt. No. 21] should be granted in part and denied in part; Plaintiff Gregory Charles Prince should be awarded $13,228.90 in attorneys' fees; and Defendant should be ordered to make the check payable to Gregory Charles Prince but to mail the check to Plaintiff's attorney's address.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 29, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE